GREEN ROCK RIDGE, INC., ET AL. *v.*
JAMES KOBERNAT ET AL.
(SC 15954)

GREEN ROCK RIDGE, INC., ET AL. *v.*
JAMES KOBERNAT ET AL.
(SC 15986)

Callahan, C. J., and Borden, Berdon, Norcott, Katz, McDonald and Peters, Js.

Argued April 27—officially released August 24, 1999

*F. Woodward Lewis, Jr.*, pro se, the plaintiff in error.

*Vincent T. McManus, Jr.*, for the defendants in error.

*Opinion*

BORDEN, J. These two cases involve two writs of error[1] brought by F. Woodward Lewis, Jr., the plaintiff

---

[1] Practice Book § 72-1 provides: "(a) Writs of error for errors in matters of law only may be brought from a final judgment of the superior court to the supreme court.

"(b) No writ of error may be brought in any civil or criminal proceeding for the correction of any error where (1) the error might have been reviewed by process of appeal, or by way of certification, or (2) the parties, by failure timely to seek a transfer or otherwise, have consented to have the case determined by a court or tribunal from whose judgment there is no right of appeal or opportunity for certification."

in error (Lewis), against the defendants in error, James Kobernat and Vicki Kobernat (Kobernats), and Vincent T. McManus (McManus). The issues raised by these two writs are whether: (1) the trial court, *Levin, J.*, improperly imposed monetary sanctions against Lewis for failing to comply with a discovery order of that court; and (2) the trial court, *Levine, J.*, improperly disqualified Lewis from representing Green Rock Ridge, Inc. (Green Rock),[2] in its case against the Kobernats, and their attorney, McManus. We dismiss both writs for lack of subject matter jurisdiction, without reaching the merits of either.

Underlying these two writs of error are two pending Superior Court cases that Green Rock currently is litigating as the plaintiff. The first trial court case involves a counterclaim brought by the Kobernats against Green Rock (Green Rock I).[3] That case underlies the first writ of error before this court. The second case is an action by Green Rock, in which it, as landlord, seeks: (1) damages from the Kobernats for nonpayment of rent, failure to repair, and preventing Green Rock from making repairs; and (2) damages from the Kobernats and McManus for fraud and abuse of process (Green Rock II).[4] The second writ of error was taken from an order of

---

[2] Green Rock also is named as a plaintiff in error in both writs of error. Because Green Rock is a party to both cases underlying the writs of error; see parts I A and B of this opinion; any claims it may have regarding the propriety of the orders of the trial courts may be addressed through an appeal. Green Rock, therefore, may not have its claims reviewed through these writs. See Practice Book § 72-1. To the extent, therefore, that the writs of error involve Green Rock as a plaintiff in error, the writs must be dismissed.

[3] Green Rock II was initiated by Green Rock against the Kobernats. The Kobernats counterclaimed for damages, alleging that Green Rock had violated the Connecticut Unfair Trade Practices Act. Green Rock thereafter withdrew its claims against the Kobernats. Consequently, only the Kobernats' counterclaim against Green Rock remains to be litigated. See part I A of this opinion.

[4] McManus has appeared pro se with respect to these claims.

the trial court, *Levine, J.*, disqualifying Lewis from representing Green Rock in the latter case.

## I

## A

## Green Rock I

The facts that we have gleaned from the appeal papers and the trial courts' files are as follows. Green Rock is a New Hampshire corporation. Lewis is an attorney and the president of Green Rock. His wife, Linda Lewis, is also an officer of Green Rock.

Green Rock owned a single-family dwelling in Wallingford, which it leased to the Kobernats for the period from June 1, 1995, through May 31, 1996. At the time that Green Rock and the Kobernats entered into the lease, the house was occupied by another tenant.

The Kobernats moved into the house before June 1, 1995, although they did not have a key. Upon the Kobernats' moving, it was discovered that the house had been damaged. James Kobernat then contacted Green Rock regarding the damage to the house. Thereafter, a representative of Green Rock and the Kobernats inspected the house. Green Rock then asked the Kobernats to move out, which they declined to do.

Green Rock then brought a summary process action against the Kobernats based on nonpayment of rent.[5] While the summary process action was pending, Green Rock also filed an action for money damages against them. In that action, Green Rock claimed: that it had suffered damages because it had been denied access to the house and, therefore, was unable to make repairs;

---

[5] The summary process action was dismissed on September 14, 1995. Green Rock also filed another summary process action, and another civil action against the Kobernats. There is no record before this court regarding the substance and the outcomes of those actions.

that the Kobernats had not provided for insurance as required by the lease; and that they had not paid rent.

In their answer in that action, the Kobernats set forth a special defense and a counterclaim. In their counterclaim, the Kobernats alleged violations of the Connecticut Unfair Trade Practices Act (CUTPA); General Statutes §§ 42-110a and 42-110b.[6] In support of their special defense and counterclaim, the Kobernats alleged that the house did not comply with the Wallingford housing code,[7] and that the damage to the house made it uninhabitable.[8] The Kobernats alleged, therefore, that no rent was due to Green Rock.

Sometime between June and the end of September, 1995, Green Rock made some, but not all, of the needed repairs to the house. Green Rock did not, however,

---

[6] General Statutes § 42-110b (a) provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

Under General Statutes § 42-110a (4), " '[t]rade' and 'commerce' means the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state."

[7] Section 167-3 of the Wallingford housing code provides in relevant part: "A. Certificate of Compliance

"(1) No dwelling or dwelling unit may be let until the dwelling or dwelling unit has been inspected by the Code Enforcement Officer and either a certificate of compliance has been issued or an extension of time has been granted under § 167-11B (3) for correction of any violations. A certificate of compliance shall expire after each tenant change and after five years with the same tenant. It shall be the responsibility of the owner (includes agents, executors, administrators, trustees and guardians) to notify the Code Enforcement Officer of all vacancies and after five years with the same tenant. Any such inspection shall be made within two working days after receipt of an application for a certificate of compliance, except that if the unit is to be relet immediately upon termination of the prior tenancy, such inspection shall be made on the last day of the prior tenancy, provided that the owner has given notice to the Code Enforcement Officer at least two days prior to the change in occupancy. . . ."

[8] The Kobernats alleged, however, that they had taken possession of the house because they had nowhere else to go.

obtain a certificate of compliance[9] from the town of Wallingford for the house until December 12, 1995. Green Rock then withdrew its complaint, but the counterclaim survived.

Lewis was Green Rock's trial attorney in this action from September 19, 1995, through September 11, 1997. On September 11, 1997, the trial court disqualified Lewis from representing Green Rock in that case pursuant to rule 3.7 (a)[10] of the Rules of Professional Conduct, on the ground that Lewis would be a material witness at the trial. Thereafter, attorney Bruce A. Chaplin represented Green Rock.

On March 9, 1998, the Kobernats served Lewis with a subpoena to appear for a deposition on the next day. In response, Green Rock filed a motion to quash, and a motion for a protective order, citing, among other reasons, the attorney-client privilege. The trial court ordered Lewis to appear for a deposition in McManus' office, and also ruled that it would not "rule on matters of privilege in advance," but that it would "do that on a question by question basis." Lewis then appeared in McManus' office for a deposition, during which he refused to answer nearly every question that he was asked by McManus, claiming the attorney-client privilege.[11]

---

[9] Pursuant to § 167-3 A (1) of the Wallingford housing code, a certificate of compliance must be obtained before a rental property may be relet after its occupants have vacated. See footnote 7 of this opinion.

General Statutes § 47a-5 provides: "In any borough, city or town which requires a certificate of occupancy prior to human habitation of any building located therein, if any building is occupied in whole or in part without such occupancy permit, the owner or lessor of the premises shall be liable for a civil penalty of not more than twenty dollars per day, per apartment or dwelling unit, for not more than two hundred days for such period of unlawful occupation."

[10] Rule 3.7 (a) of the Rules of Professional Conduct provides in relevant part: "A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness . . . ."

[11] After admitting that he has been the president of Green Rock since its inception, Lewis declined to answer more than seventy questions on the

The Kobernats then filed a motion for sanctions against Green Rock and Lewis. Subsequently, Chaplin moved to withdraw as Green Rock's counsel, stating, among other reasons, that the "difficulties between the

grounds of the attorney-client privilege. Among the questions asked by McManus for which Lewis asserted the privilege were:

"Q. All right. What specific privilege do you claim, sir?

"A. The attorney-client privilege as a witness who has been prior attorney counsel.

"Q. You're claiming—attorney-client privilege is being claimed on that question?

"A. Yes, that's correct.

"Q. And what specific part of the attorney-client privilege is it that you claim that question invades?

"A. I can't answer that on the basis of the attorney-client privilege.

"Q. And in what way do you claim that question invades any part of the attorney-client privilege?

"A. I can't answer that on the basis of the attorney-client privilege.

\* \* \*

"Q. Do you know a James Kobernat?

"A. I refuse to answer on the basis of the attorney-client privilege.

"Q. Do you know Vicki Kobernat?

"A. Same reason.

\* \* \*

"Q. One last time, have you ever seen this document before?

"A. I claim the attorney-client privilege.

"Q. The document that I have that has been produced by your counsel here today is addressed to someone called 'Client, F. Woodward Lewis.' Are you the F. Woodward Lewis that's the client on that document?

"A. I refuse to answer on the basis of the attorney-client privilege.

"Q. Is your name F. Woodward Lewis?

"A. I refuse to answer on the basis of the attorney-client privilege.

\* \* \*

"Q. Are you aware, Mr. Lewis, that the appearance of Mr. Chaplin has been filed in this case in lieu of your own?

"A. I refuse to answer on the grounds of attorney-client privilege.

"Q. I wish to warn you, Mr. Lewis, that I intend, if you persist in this action, of moving for sanctions and attorney's fees to be assessed against you as I believe that your claims of attorney-client privilege are not founded. I want you to know that. Do you know that now that I've told you?

"A. I refuse to answer on the grounds of attorney-client privilege.

\* \* \*

"Q. How long have you been the attorney for Green Rock Ridge, Inc.? You said since it's inception, but what year?

"A. I claim the attorney-client privilege.

two attorneys [had become] insurmountable." Chaplin's motion was granted. The trial court granted the motion for sanctions, ordered Lewis, "individually or as an officer of" Green Rock, to pay McManus the sum of $750.90,[12] and to appear in McManus' office for another deposition on June 16, 1998 at 10 a.m. Lewis paid the $750.90 to McManus, but did not appear for another deposition on June 16, 1998, as ordered.

On June 12, 1998, Lewis filed the first writ of error in this court, in which he seeks to have us review and set aside the trial court's order compelling him to appear for a deposition, and to order McManus to return the $750.90 to him. Thereafter, the defendants in error moved to dismiss this first writ of error. We denied that motion without prejudice subject to being reviewed and reconsidered when the writ was argued before us. In addition, we ordered the parties to address several questions, among them the following: "Is the order requiring the witness F. Woodward Lewis to attend a second deposition an interlocutory order that cannot be reviewed at this time?"

Subsequently, Lewis filed a motion for supervision of procedure in this court, in which he sought to have

---

\* \* \*

"Q. Is your wife's name Linda?
"A. I claim the attorney-client privilege.

\* \* \*

"Q. Is Andrea Brooks an employee of Green Rock Ridge, Inc.?
"A. I refuse to answer on the grounds of attorney-client privilege.
"Q. Does Green Rock Ridge, Inc., have other employees?
"A. I refuse to answer on the grounds of attorney-client privilege.
"Q. Does Green Rock Ridge have any employees?
"A. I refuse to answer on the grounds of attorney-client privilege.

\* \* \*

"Q. As president of Green Rock Ridge, Inc., are you going to answer any of my questions here today?
"A. I refuse to answer on the grounds of the attorney-client privilege."

[12] The trial court imposed the monetary sanctions to compensate McManus for the costs of the deposition and of filing the motion for sanctions.

this court stay all the trial court actions pending the outcome of his first writ of error, and to disqualify McManus from continuing to represent the Kobernats, both in the trial court and in this court. In addition, Lewis sought to have this court impose sanctions on McManus for repeatedly attempting to depose him while his writ of error was pending in this court. We denied these motions and, sua sponte, dismissed "that portion of the writ of error that seeks review of the order requiring F. Woodward Lewis to testify at an upcoming deposition and to bring with him all documents previously ordered by the court or otherwise subpoenaed." Accordingly, we also modified our previous order by eliminating the question noted previously. We were informed at the oral arguments on the merits of these writs that Lewis has since been deposed to the satisfaction of the defendants in error.

## B

## Green Rock II

In April, 1998, Green Rock brought another civil action against the Kobernats and McManus. Initially, Lewis represented Green Rock in that action. The Kobernats moved to disqualify Lewis from representing Green Rock as its attorney in that action. The trial court granted the motion to disqualify Lewis. Lewis then filed the second writ of error in this court seeking reversal of the trial court's order disqualifying him as Green Rock's attorney.

## II

In his first writ of error, Lewis claims that the trial court improperly: (1) ordered him to attend another deposition; and (2) imposed monetary sanctions on him. We dismiss this writ of error for lack of jurisdiction.

First, we conclude that any claim regarding the propriety of the order of the trial court directing Lewis

to appear for another deposition is moot. "[M]ootness implicates the jurisdiction of the court." *Goodson* v. *State*, 228 Conn. 106, 114, 635 A.2d 285 (1993). "It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . In the absence of an actual and existing controversy for us to adjudicate . . . the courts of this state may not be used as a vehicle to obtain judicial opinions upon points of law . . . and where the question presented is purely academic, we must refuse to entertain the appeal." (Citations omitted; internal quotation marks omitted.) *Delevieleuse* v. *Manson*, 184 Conn. 434, 436, 439 A.2d 1055 (1981). "When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *Loisel* v. *Rowe*, 233 Conn. 370, 378, 660 A.2d 323 (1995).

The controversy in the present case arises out of a discovery order, which, according to Lewis, would have led him to violate the attorney-client privilege by compelling him to disclose, to Green Rock's adversaries, information that he had obtained through his professional relationship with Green Rock. We dismissed this aspect of the writ prior to the oral arguments. Consequently, Lewis has been deposed to the satisfaction of the defendants in error. To the extent, therefore, that the writ of error challenges the trial court's order requiring Lewis to attend the deposition, the writ is moot because there is no longer a viable controversy for which we can provide a remedy.

Lewis also seeks, however, to have this court order McManus to return the sum he paid pursuant to the trial court's monetary sanctions order. Given the facts

of this case, and our well established rules regarding reviewability of discovery orders, the sanctions order with which Lewis complied does not constitute a final judgment from which a writ of error lies. Just as an appeal, a writ of error requires a final judgment as a predicate. See Practice Book § 72-1; see also *State* v. *Ross*, 189 Conn. 42, 51, 454 A.2d 266 (1983) ("the use of a writ of error would in no way overcome the objections . . . to the appeal process based upon . . . the absence of finality in the judgment").

"An order issued upon a motion for discovery is ordinarily not appealable because it does not constitute a final judgment, at least in civil actions." *Chrysler Credit Corp.* v. *Fairfield Chrysler-Plymouth, Inc.*, 180 Conn. 223, 226, 429 A.2d 478 (1980); see also *Presidential Capital Corp.* v. *Reale*, 240 Conn. 623, 625, 692 A.2d 794 (1997) ("[t]he general rule established by our case law is that an interlocutory order requiring a witness to submit to discovery is not a final judgment and, therefore, is not immediately appealable"). "[W]e require that those ordered to comply with discovery be found in contempt of court before we consider an appeal . . . ." *Barbato* v. *J. & M. Corp.*, 194 Conn. 245, 249, 478 A.2d 1020 (1984).

Although this sanctions order was not itself a discovery order, it was an order for sanctions for failure to comply with the discovery procedure of a deposition. We can perceive no reason or policy why we should treat the sanctions order differently, for purposes of finality of judgment, from the discovery procedure of which it is a part. We, therefore, regard it as governed by the same principles of finality as discovery orders. Accordingly, we conclude that, in order for a deponent to challenge such a sanctions order by a writ of error, it is necessary for him to refuse to comply and be held in contempt therefor.

In the present case, Lewis was ordered by the trial court to pay McManus the sum of $750.90, in order to compensate McManus for the costs and legal fees that he had incurred in preparing for, and conducting, the deposition. Lewis paid the $750.90, thus satisfying the order. He was not held in contempt. There was, therefore, no final judgment in this case for the purpose of appellate review by way of a writ of error.[13] Accordingly, we dismiss this writ for lack of jurisdiction.

## III

In the second writ of error, Lewis challenges the order of the trial court disqualifying him from representing Green Rock in its action against the defendants in error. Specifically, Lewis claims that the trial court improperly disqualified him as the trial attorney for Green Rock. We recently held that a disqualified attorney does not have standing to challenge the disqualification order by way of a writ of error. *Crone* v. *Gill*, 250 Conn. 476, 477, 736 A.2d 131 (1999). That conclusion disposes of this writ of error, and requires its dismissal.

The writs of error are dismissed.

In this opinion the other justices concurred.

---

[13] In *CFM of Connecticut, Inc.* v. *Chowdhury*, 239 Conn. 375, 402, 685 A.2d 1108 (1996), we analyzed as a final judgment for the purposes of appeal a monetary sanctions order against an attorney for bad faith pleading. There are several critical distinctions between that case and the present case. The former did not involve a sanctions order in connection with discovery. Moreover, in that case, sanctions were imposed on an attorney for conduct as an attorney. In the present case, by contrast, Lewis was not sanctioned as an attorney. He was a deponent at a deposition that was being conducted by the adversary of his former client, Green Rock. Indeed, Green Rock was being represented by Chaplin at that deposition. In any event, to the extent that in *CFM of Connecticut, Inc.*, we suggested that *any* monetary sanctions order imposed by a trial court is a final judgment for the purposes of an appeal or a writ of error, we confine that case to its facts.