[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE PLAINTIFF'S MOTION TO DISOUALIFY COUNSEL (#103)
This memorandum of decision addresses the plaintiffs Motion to Disqualify Counsel dated January 15, 2000 (# 103), which seeks to bar Attorney David Kamins from representing any of the three defendants in this matter. Oral argument on the motion and the defendant's objection (# 10800) was first presented to the court on April 10, 2000. (Beach, J.) The court having determined that an evidentiary hearing should be scheduled, testimony and documentary exhibits were presented, along with additional argument, at a second short calendar session on May 8, 2000. After hearing and consideration, under the circumstances of this case, the court finds merit in two aspects of the plaintiff's claim, and grants the motion to disqualify counsel for the reasons set forth below.
The pending litigation arises from the plaintiffs former membership in a Connecticut limited liability company known as Boise, L.L.C. (Boise), and the disposition of the plaintiffs interest in that enterprise. Through the revised complaint (#102), the plaintiff has alleged that the defendants Steven Bacon and David Palmieri, who were also members of Boise, caused or allowed him to be to subject to misrepresentations concerning the value of Boise's assets, all of which led to the plaintiffs receipt of less than adequate payment for his interest in that company. The plaintiff specifically claims to have suffered monetary loss and emotional distress as a result of the breach of fiduciary duty, fraud, and negligent misrepresentation by these defendants, who failed to provide him a due share of both the proceeds of Boise's sale and compensation for his employment with Boise. The plaintiff further claims that the third defendant, Thomas DiMarco, breached a fiduciary duty owed to him and made negligent misrepresentations, causing the harm described above. The plaintiff has brought also CUTPA claims against each of the three defendants, arising from their relationship with Boise. No action has been brought against Boise.
Atty. Kamins has appeared as counsel for each of the named defendants. The plaintiff submits three reasons why Kamins should be disqualified from further service in this role: first, that he has been the plaintiffs CT Page 7832 personal attorney for decades and thereby became privy to significant confidential information; second, that he will likely be called as a witness at trial, to relate evidence concerning the negotiations and the other circumstances of Boise's sale; and third, that he represented Boise in connection with the sale of its assets, while the plaintiff was still a member of that company, so that his representation of the remaining members defendants is violation with Rule 1.13 of the Rules of Professional Conduct. The defendants contest each of these claims, arguing that because the plaintiff was represented by private counsel during the pre-sale period, Rule 1.13 cannot apply. The defendants further claim that they are entitled to have selected Kamins as their counsel, because he had no prior relationship with the plaintiff which suggests a violation of the Rules of Professional Conduct, and that Kamins's information concerning the sale of Boise is not so fundamental that he should be precluded from representing their interests.
Generally, "[t]he trial court has the authority to regulate the conduct of attorneys and has a duty to enforce the standards of conduct regarding attorneys. . . . Since October, 1986, the conduct of attorneys has been regulated also by the Rules of Professional Conduct, which were approved by the judges of the Superior Court and which superseded the Code of Professional Responsibility . . . The trial court has broad discretion to determine whether there exists a conflict of interest that would warrant disqualification of an attorney." Bergeron v. Mackler, 225 Conn. 391,397, 623 A.2d 489 (1993). "A party moving for disqualification of an opponent's counsel must meet a high standard of proof." (External citations omitted.) Place v. City of Waterbury, Docket No. CV96-131435 (Nov. 19, 1999) (Pelligrino, J.).
 I FACTS
From the record and evidence presented at the hearing, the court determines that the plaintiff met Kamins in a social setting many years ago. The plaintiff was involved in a number of businesses over the years, generally in an ownership position, related to bus transportation, travel-planning and photographic services. From time to time in the 1980's, Kamins had represented the plaintiffs companies in the collection of debts. Kamins had also represented Creative Tours, a company in which Kamins had a partial ownership interest, in a lawsuit: Kamins had withdrawn from his role as counsel in that case, for unspecified reasons. While Kamins's wife was sometimes engaged in these businesses with the plaintiff, there was insufficient evidence from which the court could conclude that Kamins and the plaintiff had an intimate, long-standing social relationship, or that Kamins had acquired detailed CT Page 7833 and in depth knowledge of the plaintiffs relevant and/or related business or family affairs, other than that related to the debt collection and litigation matters referenced above.[1]
Subsequently, the plaintiff became involved with Bacon and Palmieri in the Boise enterprise. With these others, the plaintiff held an equity interest in this L.L.C. The plaintiffs membership status in this company was placed at issue when he wrote to Bacon and Palmieri on August 1, 1997, indicating his intention to seek a dissolution of Boise, L.L.C. and to collect compensation both for his interest in that entity and for sums due to him for employment services he had rendered to the company.
There was insufficient evidence from which the court could conclude that Kamins had been directly or indirectly involved in the formation of Boise, although it is clear that the plaintiff had introduced Bacon and Palmieri to this attorney. Following receipt of the plaintiffs letter requesting the dissolution, Bacon and Palmieri retained Kamins to represent them in an effort to work out the company's dissolution. During the work out period, the plaintiff was personally represented by Atty. Steven Zelman. By October 8, 1997, in addition to his personal representation of Bacon, and Palmieri, Kamins formally and expressly represented Boise, L.L.C., the partnership, of which the plaintiff was still a member. During the dissolution process, the plaintiff negotiated directly with Bacon, Palmieri and Kamins, as well as through Zelman.
In this multi-faceted position, Kamins wrote to Zelman on October 8, 1997, raising certain issues related to the Boise work out. Among those issues was the question of whether Kamins had a conflict of interest concerning his continued participation as counsel, given his relationship to the plaintiff and to the company. Kamins's letter states: "I do now, of course, represent Boise, Inc. (sic) . . . and Michael [Chaiklin] is a shareholder in that company. I don't think that any of these matters that I have mentioned, or anything else, presents a conflict which would prevent me from representing Boise in this matter, even if it becomes adversarial between Boise and Michael. If you do not agree, or if Michael Chaiklin does not agree, please let me know right away, and we will make that another issue which needs to be resolved." Until the submission of the instant motion for disqualification, neither the plaintiff nor his counsel had affirmatively asserted Kamins's conflict of interest.
The negotiation for the sale of Boise's assets was conducted in October, November and December of 1997. By late December of that year, the assets were sold to Coach, USA, a transportation company headquartered in Houston, Texas. The terms of this sale were determined by the defendants Bacon, Palmieri and DeMarco. While Kamins denied any role in the negotiations, claiming that he had merely reviewed documents CT Page 7834 related to the transaction after the papers were submitted by Coach's in-house counsel, he admitted that these defendants had each sought his advice in connection with the sale of Boise's assets. At the evidentiary hearing, Kamins refused to disclose the amount of the sale price for the Boise assets, although he admitted having knowledge of this figure through receipt and review of the sale contract.
After Kamins communicated with Zelman, Boise and the plaintiff entered into a written agreement establishing that he would be entitled to a total payment of $75,000 after the sale of the company's assets. This agreement also established that the plaintiff was to withdraw from membership in Boise before the sale of its assets took place, but that he was not to be paid until after the sale: the contract also included a provision which would reassert the plaintiffs membership status if the plaintiff did not receive this payment.[2] This agreement further acted to establish a contingent contract for the plaintiffs participation in the partnership, which agreement remained in effect and was not discharged until the plaintiff received the contemplated $75,000 payment. Kamins was actively engaged in the negotiations that led to the defendant's decision to pay the plaintiff $75,000 for his compensation and interest in the company: he denied, however, knowledge of which individual or post-Boise entity was intended to honor the obligation to make payment to the plaintiff.[3]
At the time of the sale to Coach, the defendant DiMarco held an interest in Boise, apparently as a replacement for the plaintiff. At the behest of Boise, L.L.C., Karnins had prepared the legal documents enabling DiMarco to become a member of that company, which was enabled by the plaintiffs primary departure from Boise. There was insufficient evidence from which the court could conclude whether DiMarco had tendered any specific consideration for his new status with Boise.[4]
Thus, after the issuance of the contract setting forth the terms of his discharge from Boise in late October or early November of 1997, the plaintiff held an inchoate membership interest in that partnership. His inchoate status resulted from, or was at least supported by, Kamins's provision of legal services to Boise, as a partnership, and to the defendants Bacon and Palmieri. Similarly, the defendant DiMarco's entry into the Boise enterprise was enabled and/or effectuated by Kamins's representation of Boise, Bacon and Palmieri. By January of 1998, Coach had purchased the Boise assets, and the plaintiff had received a substantial portion of the promised $75,000.
 II KAMINS'S STATUS AS PLAINTIFF'S PERSONAL ATTORNEY CT Page 7835
The plaintiff vigorously asserts that because Kamins has known him for so many years, the attorney is privy to confidential and privileged information concerning his business and personal affairs. He argues that access to the information Kamins received from him, as a social friend and as a former client, would render this attorney's participation as counsel for the defendants improper and inappropriate. The defendant denies these allegations. The court finds this issue in favor of the defendants.
The plaintiffs evidence on this historical subject covers three general subject areas. The first area is composed of evidence related to the business relationship Kamins's wife had with the plaintiff. The plaintiff testified, for instance, that Kamins's wife was a co-owner of the afore-mentioned "Creative Tours," for which Kamins performed some collection work and pursued at least one law suit, all in the 1980's. However, the status of Kamins's, wife in terms of her past relationship with the plaintiff, does not in and of itself establish the conflict of interest upon which this aspect of the disqualification claim is apparently based. The plaintiff has not shown, for instance, that Kamins shared confidential information with his wife at any time, potentially breaching a attorney-client relationship that may have existed with the plaintiff. The plaintiff has not shown that Kamins's wife even disclosed information concerning certain aspects of the business endeavors she shared with the plaintiff, or that Kamins knew any information about these businesses other than that related to the litigation and debt matters. Thus, the evidence related to this area does not provide an adequate basis from which the court could conclude that either Kamins's relationship to his own wife, or the plaintiffs relationship to this spouse, allowed the attorney access to information about the plaintiff that could be used to the plaintiffs disadvantage in the current litigation. See RULES OF PROFESSIONAL CONDUCT Rule 1.9(2).
The second area is composed of evidence related to Kamins's representation of the plaintiffs business interests. Evidence on this subject consisted almost entirely of the plaintiffs conclusory statements concerning the legal work Kamins had performed for him in the remote past. The plaintiff claims, for instance, that Kamins had "wound up" some of the plaintiffs other businesses before he was involved with Boise. However, the evidence does not disclose any specific facts concerning this work, such as the time when the work was performed, or the scope of Kamins's legal assistance to the plaintiff. While the plaintiff claims that Kamins had a close relationship with him, and that Kamins was very much aware of the plaintiffs business plans and practices, the court was presented with insufficient evidence from which it could reasonably conclude that such a relationship arose in the context of representation CT Page 7836 in a substantially related matter, nor that it would have allowed Kamins access to information about the plaintiff that could be used to the plaintiffs disadvantage in the current litigation. See RULES OF PROFESSIONAL CONDUCT Rule 1.9(1) and (2).
The third area of evidence related to the plaintiffs historical relationship with Kamins focused upon the circumstances that led this attorney to represent the defendants Bacon and Palmieri in the current litigation. The plaintiff asserts that because he introduced Kamins to the other members of Boise, while Kamins was employed as in-house counsel for Morande Ford, the attorney should be barred from representing the defendants in this matter. The plaintiff has failed to establish that any provision of the Rules of Professional Conduct prohibits Kamins's participation in the instant litigation, on the basis of the circumstances of his introduction to these clients. Accordingly, in the absence of a defined conflict of interest arising from these facts, the court declines to adopt the plaintiffs position on this issue.
Based upon the foregoing, the court finds that Kamins's representation of the plaintiff in the past has not been shown to involve matters which were substantially related to the present action. Accordingly, the court here finds no adequate basis for disqualification. See Bergeron v.Mackler, supra, 225 Conn. 400; Errante v. Errante, Docket No. FA97-0399752, judicial district of New Haven (Sept. 17, 1998) (Axelrod, J.).
 III KAMINS'S ROLE IN THE SALE OF BOISE
The plaintiff also claims that because Kamins was a primary participant in the negotiations preceding the sale of Boise's assets, and because he was a witness to the circumstances surrounding this sale, he should not be permitted to serve as counsel for Bacon and Palmieri. The plaintiff apparently relies upon Rule 3.7 of the Rules of Professional Conduct, which provides, in pertinent part: "(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where: (1) The testimony relates to an uncontested issue; (2) The testimony relates to the nature and value of legal services rendered in the case; or (3) Disqualification of the lawyer would work substantial hardship to the client." The plaintiff has indicated that he intends to call Kamins at trial to provide testimony on issues related to the decision to allow the plaintiff to withdraw from Boise, the facts establishing the negotiations for the sale of Boise's assets and the amount received by the then-current members of Boise, and the circumstances of the distribution of funds after Boise's dissolution. CT Page 7837 None of these subjects falls within one of the three exceptions to Rule 3.7 noted above. Given the evidence supporting Kamins's knowledge of and participation in his representation of the partnership, while the plaintiff was an active and/or inchoate member of that partnership, but without addressing the admissibility of any evidence Kamins may present on this subject at trial, the court finds this issue in favor of the plaintiff.
To claim the protection of Rule 3.7, the plaintiff bears the burden of proving that Kamins would be a "necessary" witness in this case. In the context of this matter, which is a civil claim based upon claims of fraud, misrepresentation, breach of fiduciary duty and collusion in the discharge of the plaintiff from Boise prior to the sale of its assets, Kamins's observations and perceptions of actions or omissions by Boise's members will likely be pertinent to material facts which are essential to the thorough presentation of the evidence by either party. Especially important is the nature and extent of direct communication the plaintiff had with Kamins during the negotiations phase of the Boise dissolution process: the court credits the plaintiffs testimony which indicated that Kamins had at least one lengthy telephone conference with the plaintiff during this period, even while the plaintiff was represented by Zelman, concerning the plaintiffs interests in the outcome of the Boise sale. This conversation is likely to be a subject of evidence at trial, placing at issue the plaintiffs intentions and goals for the sale, as stated during this conversation, and is likely to result in inferences contrary to those alleged in the complaint, if Kamins is not available for direct and/or cross-examination.[5] This conversation also places Kamins's continued role in this case squarely within the scope of the Commentary to Rule 3.7. As that commentary explains, "[c]ombung the roles of advocate and witness can prejudice the opposing party and . . . may prejudice that party's rights in the litigation." See RULES OF PROFESSIONAL CONDUCT Rule 3.7, cmt.
In assessing the effect of Rule 3.7 in this case, the court has given due regard to the burden that might be placed upon the defendants if Kamins were disqualified from serving as their counsel. In this regard, the court notes that the pending litigation occupies an "early" status, both chronologically and procedurally. The complaint in this case bears a return date of November 30, 1999; Kamins's appearance was received by the court on November 12th Thereafter, counsel engaged in modest skirmishes over the contents of the complaint, and the discovery process was commenced through the plaintiffs submission of interrogatories, requests for production and requests for admission. The plaintiffs motion for disqualification was filed at court on January 20, 2000, in the midst of these preliminary trial-preparation proceedings, and the subject of disqualification was addressed through counsels' respective briefs. There CT Page 7838 was no evidence submitted from which the court could reasonably conclude that Kamins bears such an extraordinary degree of skill or interest in the defendants's position that he, alone, can serve effectively as their trial counsel. The defendants have not suggested that their financial status enabled them to employ Kamins, but no other lawyer. These factors, taken together with the "early" status of the case, all effectively mitigate any burden the defendants might bear as the result of need to select new counsel, and demonstrate that disqualification of Kamins would not work substantial hardship upon them. RULES OF PROFESSIONAL CONDUCT Rule 3.7(a)(3).
Without addressing the admissibility of such evidence as may be tendered, the court then finds that Kamins's knowledge concerning the nature and circumstances of the Boise dissolution, the sale of the Boise assets to Coach, and the payment to the plaintiff, all indicate that he is likely to be a necessary, material and relevant witness in this matter. Here, the plaintiff has meet his "high standard" of proving the basis for disqualification of counsel. Place v. City of Waterbury, supra, Docket No. CV96-131435. Accordingly, Kamins should not participate as an advocate for the defendants at this trial. RULES OF PROFESSIONAL CONDUCT Rule 3.7; see also Green Rock Ridge, Inc. v. Kobernat,250 Conn. 488, 493, 736 A.2d 851 (1999); see also Connecticut Bar Association Committee on Professional Ethics, Informal Opinion 93-13 (1993).
 IV APPLICATION OF RULE 1.13 TO KAMINS'S ROLE AT BOISE
The plaintiff further argues that Kamins should be barred from serving as counsel for the named defendants because he represented Boise in connection with the sale of its assets, while the plaintiff was still a member of that company, and that his participation as an advocate for other members would violate Rule 1.13 of the Rules of Professional Conduct. The defendants deny that this rule should be interpreted to preclude Kamins from serving as trial counsel. Under the circumstances of this case, the court finds this matter in favor of the plaintiff.
The present conundrum arises from Kamins's clear and unequivocal statement that he represented Boise during the late fall of 1997, at the time when the inchoate agreement for the plaintiff's discharge from the company was in effect, during the period when the contested negotiations for the sale of Boise were occurring, but prior to the time when the plaintiff had received his discharge payments. The court's concern focuses upon the fact that Kamins thus, at a material time, represented the very entity, Boise, which had acted through its remaining members to CT Page 7839 define the terms of the plaintiffs departure from membership. While Kamins represented Boise, the plaintiff was a member of that entity, and this circumstance cannot be ignored. Viewed from this perspective, it is clear that whether the plaintiff also had retained private counsel during this period does not dispose of the issues related to a conflict of interest involving Kamins.
Rule 1.13(a) of the Rules of Professional Conduct generally establishes that "[a] lawyer employed or retained by an organization represents the organization . . ." Subsection (a) must be read in conjunction with Rule 1.13(e), which provides that a lawyer may also represent any of that organization's directors and officers, subject to the implications and effect of Rule 1.7, which in turn prohibits the representation of one client "if the representation of that client will be directly adverse to another client." Under the circumstances of this case, these sections of the Rules of Professional Conduct also must be glossed in the light of Rule 1.9, referencing former clients. In the present action, unless the plaintiff had expressly consented to or ratified Kamins's representation of Boise, Bacon and Palmieri, while Kamins represented Boise he also must be seen to have represented the interests of the plaintiff concerning his membership in that partnership, pending perfection of his contract for discharge. Thus, the concept of dual representation must be evaluated to fully understand the effect of Kamins's continued participation as trial counsel for the defendants in this case. See Connecticut Bar Association Committee on Professional Ethics, Informal Opinion 93-13 (1993), citing ABA Formal Ethics Opinion 91-361 (July 12, 1991, ABA/DNA Lawyers Manual on Professional Conduct, 1001:110, Representation of a Partnership.
The defendants argue that the plaintiff and his counsel were put on notice of the potential conflict of interest arising from Kamins's position during the informal work-out period, when arrangements were being made for the plaintiffs discharge from Boise, and in the subsequent formal dissolution of Boise. The evidence does not disclose any facts supporting the conclusion that either the plaintiff or Zelman responded to Kamins's letter of October 8th 1997, ostensibly raising the issue of a conflict of interest. Even in view of the plaintiffs delay in confronting the conflict of interest issues, however, the facts of this matter do not present circumstances which require the court's acknowledgment of a constructive waiver of the disqualification claim, based upon the plaintiffs failure to object to Kamins's role in the case prior to the institution of suit.[6] The matter is not mature: the pleadings are not closed; extensive deposition and discovery proceedings have not been undertaken; the matter has not been subject to court intervention by way of pre-trial or trial management conferences. The court is therefore unable to find that the defendants have so detrimentally relied upon the CT Page 7840 plaintiffs apparent silence following Kamins's October 8th letter that they will become subject to an undue burden or prejudice through the imposition of a court order which disqualifies Kamins from serving as their trial counsel.
Until the completion of the plaintiffs discharge from Boise, then, while he remained a member in fact, if not a member in name, of that company, the plaintiff was entitled to the fiduciary obligations of Kamins, who served as Boise's attorney. "Once the existence of an attorney-client relationship is established, the court then determines whether there exists a `substantial relationship' between the present and past representations. State v. Jones, 180 Conn. 443, 450, 429 A.2d 936
(1980)." Place v. City of Waterbury, supra, Docket No. CV 96 131435. The parameters of Rule 1.13 apply equally to corporations and to unincorporated associations such as Boise. See RULES OF PROFESSIONAL CONDUCT Rule 1.13 cmt. Thus, for the purposes of the factual claims which underlie this case, the court finds that a "substantial relationship" exists between Kamins's past representation of the plaintiff, as a member of Boise, and his present representation of the defendants Bacon and Palmieri. Place v. City of Waterbury, supra, Docket No. CV 96 131435; see also Bergeron v. Mackler, supra, 225 Conn. 398.
The issues raised in this case seem most closely akin to those addressed by the Connecticut Bar Association Committee on Professional Ethics in Informal Opinion 93-13 (1993), supra. That opinion addressed the question of whether an attorney could serve as counsel for a general partner of a previously represented partnership, in a claim brought by another partner arising from contests over the status of the partnership agreement. In that case, opining that counsel could not represent the general partner under these circumstances, the Committee found that Rule 1.9(a) seemed dispositive of the matter, but noted as well the implications and effect of Rule 1.7.[7] Since the fundamental matter at issue in the present case is the effect of a partnership agreement and the withdrawal of a partner during the period when Kamins represented the partnership, the Committee's opinion is clearly pertinent here: under the present circumstances, Kamins "may not represent the remaining partners against the withdrawing partner, whose interests are clearly materially adverse to those of the remaining partners. . . ." Connecticut Bar Association Committee on Professional Ethics, Informal Opinion 93-13 (1993).
Based on the principles notes above, and under the circumstances of this case, where the plaintiffs claims are derived almost entirely from alleged machinations of Boise and its other members in achieving the end of determining what compensation he should receive for his interest and past employment services, the court finds that such a "substantial CT Page 7841 relationship" existed between the plaintiff and Boise's attorney, through the plaintiffs membership in Boise, that Kamins should not be permitted to serve in a capacity adverse to the plaintiff in this matter. Place v.City of Waterbury, Docket No. CV96-131435. See RULES OF PROFESSIONAL CONDUCT Rules 1.13, 1.9 and 1.7; Connecticut Bar Association Committee on Professional Ethics, Informal Opinion 93-13 (1993). Here again, the plaintiff has meet his "high standard" of proving the basis for disqualification of counsel. Place v. City of Waterbury, supra, Docket No. CV96-131435.
WHEREFORE, the court finding that Kamins's continued participation in this matter is foreclosed by application of the Rules of Professional Conduct and the principles espoused therein, the plaintiffs Motion to Disqualify Counsel (# 103) is hereby GRANTED.
BY THE COURT,
N. Rubinow, J.