******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JAMES M. MCCONNELL *v.* KATHLEEN A.
MCCONNELL ET AL.
(SC 19257)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and
Robinson, Js.

*Argued February 11—officially released April 21, 2015*

*Elizabeth M. Christofaro*, with whom, on the brief,
were *Mark R. Cramer* and *Lila M. McKinley*, for the
plaintiffs in error (Andrews & Young, P.C., et al.).

*Jane R. Rosenberg*, assistant attorney general, with
whom, on the brief, was *George Jepsen*, attorney general, for the defendant in error.

*Opinion*

ESPINOSA, J. The dispositive question that we must answer in this case is whether a trial court's order requiring attorneys who are not parties and who are not representing parties to underlying litigation to appear in court and subject themselves to examination, was a final judgment that may be challenged by way of a writ of error. This matter arises from an appeal brought by James M. McConnell (McConnell) from an order of the Probate Court authorizing certain distributions to Kathleen Anne McConnell Hewitt and Amy McConnell Sheridan from the John E. McConnell Living Trust (trust). In that appeal, McConnell claimed that he was a beneficiary of the trust and that he had received no notice of the proceedings that had resulted in the Probate Court's order. Concerned by this allegation, the defendant in error, the Superior Court in the judicial district of New London (trial court), issued an order to show cause why McConnell's appeal should not be sustained and the Probate Court's order vacated. The trial court ordered the plaintiffs in error, Andrews & Young, P.C., Lois Andrews and James Young, who had represented Hewitt in the Probate Court proceedings, to appear in court at a hearing on the order to show cause. The plaintiffs in error appeared at the hearing and were subject to examination. Thereafter, the plaintiffs in error filed this writ of error challenging the trial court's order that they appear in court. We conclude that the order was not a final judgment and, therefore, may not be challenged by way of a writ of error. Accordingly, the writ of error must be dismissed.

The record reveals the following undisputed facts and procedural history. In 2000, John E. McConnell created the trust and named his three children, McConnell, Hewitt and Sheridan, as beneficiaries. In June, 2010, after learning that Sheridan, as cotrustee of the trust, had distributed $409,000 from the trust to herself, Hewitt filed in the Probate Court an application for a trust accounting, reimbursement of the trust, removal of a trustee, appointment of a successor trustee, removal of the attorney in fact, a restriction on changing the residence of John E. McConnell, and for payment of attorney's fees (application). The plaintiffs in error represented Hewitt during proceedings on the application in the Probate Court. On January 25, 2011, the Probate Court approved a stipulated agreement, pursuant to which Hewitt would receive $600,000 from the trust, plus attorney's fees, Sheridan would receive $166,000 from the trust and would be permitted to keep $409,000 that had previously been distributed to her, and McConnell would receive $35,000.

Although McConnell was a trust beneficiary and had an interest in the proceedings on Hewitt's application, McConnell was not named as an interested party in the application and did not receive notice of the Probate

Court proceedings. McConnell first learned of the proceedings in October, 2011, at which time he contacted the Probate Court. On December 8, 2011, the Probate Court held a status conference. On that same date, the Probate Court issued an order, stating that "McConnell is satisfied with the results from the status hearing and as such the [trust] file shall be [c]losed and [r]ecorded."

McConnell then appealed to the trial court from the Probate Court's January 25 and December 8, 2011 orders, claiming that he had not been listed as an interested party or beneficiary in Hewitt's application, that he had not received notice of the proceedings and that he would not have consented to the terms of the stipulated agreement if he had had the opportunity to participate. McConnell's complaint and reasons for appeal named Richard M. Hoyt, Jr., the current trustee of the trust, and Hewitt and Sheridan as defendants. Thereafter, the trial court ordered "interested parties . . . to show cause why the [appeal] should not be sustained and the decrees/orders of the Probate Court entered/dated January 25, 2011, and December 8, 2011, be vacated." In the order to show cause, the court stated that, on the basis of the evidence that it had reviewed to date, the court could find that Hewitt, Sheridan and their attorneys had failed to alert the Probate Court that McConnell, as a trust beneficiary, was entitled to notice of the proceedings on Hewitt's application, despite their statutory duty to do so. The court found that the failure of the attorneys to comply with rule 3.3 of the Rules of Professional Conduct governing candor toward the tribunal had induced the Probate Court to commit reversible error. On September 30, 2013, the trial court ordered that the show cause order be sent to Andrews & Young, P.C., and to other attorneys who had been involved in the proceedings in the Probate Court. On October 17, 2013, the trial court ordered that the hearing on the order to show cause would continue on October 22, 2013, and ordered the plaintiffs in error and the other attorneys to appear at the hearing and to bring their files relating to the Probate Court proceedings.

On October 22, 2013, the plaintiffs in error filed a motion to vacate the order requiring them to appear and for a protective order. On that same date, counsel for the plaintiffs in error appeared at the scheduled hearing and stated that, because the plaintiffs in error had not been served with a subpoena to appear and the trial court did not have the authority to order nonparties to appear in court without proper service of a subpoena, the plaintiffs in error were not in attendance. The trial court then ordered the clerk of the court to prepare a capias for Andrews and Young. The court also denied the motion to vacate and for a protective order.

To avoid being arrested pursuant to the capias, Andrews and Young appeared in court and advised the

trial court that, by doing so, they were not waiving their position that the trial court did not have the authority to order their appearance. Andrews and Young ultimately testified about their involvement in the proceedings before the Probate Court over the course of two days. Hewitt and Sheridan were also called as witnesses, but they both refused to testify after invoking their fifth amendment right against self-incrimination.

Thereafter, the plaintiffs in error filed this writ of error contending that the trial court did not have the authority to order them to appear at the hearing on the order to show cause. The trial court contends that its order requiring the plaintiffs in error to appear in court was not a final judgment and, therefore, may not be challenged by way of a writ of error. In response, the plaintiffs in error contend that the order of the trial court was a final judgment because it "terminat[ed] a separate and distinct proceeding . . . ." (Internal quotation marks omitted.) *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983); id. ("[a]n otherwise interlocutory order is appealable in two circumstances: [1] where the order or action terminates a separate and distinct proceeding, or [2] where the order or action so concludes the rights of the parties that further proceedings cannot affect them"). We agree with the trial court.

Practice Book § 72-1 (a) provides: "Writs of error for errors in matters of law only may be brought from *a final judgment of the superior court* to the supreme court in the following cases: (1) a decision binding on an aggrieved nonparty; (2) a summary decision of criminal contempt; (3) a denial of transfer of a small claims action to the regular docket; and (4) as otherwise necessary or appropriate in aid of its jurisdiction and agreeable to the usages and principles of law." (Emphasis added.) The lack of a final judgment deprives this court of subject matter jurisdiction over a writ of error. See *Green Rock Ridge, Inc.* v. *Kobernat*, 250 Conn. 488, 498, 736 A.2d 851 (1999) ("[j]ust as an appeal, a writ of error requires a final judgment as a predicate"); see also *State* v. *Fielding*, 296 Conn. 26, 38, 994 A.2d 96 (2010) ("absence of a final judgment is a jurisdictional defect that [necessarily] results in a dismissal of the appeal" [internal quotation marks omitted]).

Both parties in the present case agree that the trial court's order requiring the plaintiffs in error to appear in court and its denial of their motion to vacate and for a protective order were akin to discovery orders, and that discovery orders generally are considered interlocutory. See *Green Rock Ridge, Inc.* v. *Kobernat*, supra, 250 Conn. 498 ("[a]n order issued upon a motion for discovery is ordinarily not appealable because it does not constitute a final judgment" [internal quotation marks omitted]). The plaintiffs in error contend, however, that, pursuant to this court's decision in *Woodbury Knoll, LLC* v. *Shipman & Goodwin, LLP*, 305 Conn.

750, 48 A.3d 16 (2012), a discovery order directed at a nonparty is a final judgment because it satisfies the first prong of *Curcio*. In *Woodbury Knoll, LLC*, the plaintiff in error, Finn, Dixon & Herling, LLP (Finn Dixon), had been served with a subpoena duces tecum in a case in which its former clients, Woodbury Knoll, LLC, Woodbury Knoll II, LLC, Paredim Partners, LLC and David Parisier (collectively, the Woodbury Knoll parties), had alleged legal malpractice against another law firm, Shipman & Goodwin, LLP (Shipman). Id., 752–53. Finn Dixon and the Woodbury Knoll parties filed objections, motions to quash the subpoena and motions for protective orders, claiming that much of the material sought by Shipman was covered by the attorney-client privilege and the attorney work product doctrine. Id., 753–54. Shipman objected to the motions to quash and for a protective order and filed a motion to compel production of the requested materials. Id., 754. The trial court ultimately granted Shipman's motion to compel. Id. Finn Dixon then filed a writ of error challenging the order of the trial court, and Shipman claimed that the writ of error should be dismissed for lack of a final judgment. Id., 754–55. This court concluded that because Finn Dixon was a nonparty to the underlying action and was "not involved in any way with the lawsuit between the [Woodbury Knoll parties] and [Shipman]"; id., 762; "the discovery order . . . is a final judgment because it satisfies the first prong of *Curcio* . . . ." Id.; see also *State* v. *Curcio*, supra, 191 Conn. 31 ("[a]n otherwise interlocutory order is appealable . . . where the order or action terminates a separate and distinct proceeding").

We have recently clarified, however, that our holding in *Woodbury Knoll, LLC*, that the relevant discovery order was a final judgment under the first prong of *Curcio* and, therefore, could be challenged by way of a writ of error, was not based solely on the fact that Finn Dixon was a nonparty to the underlying action, but was also based on the fact that "the discovery order . . . was not intertwined with the underlying proceeding." *Niro* v. *Niro*, 314 Conn. 62, 71 n.4, 100 A.3d 801 (2014). We further explained in *Niro* that a discovery order directed at a nonparty does not arise from a separate and distinct proceeding, but is intertwined with the underlying action when the information sought in the order is required by the finder of fact to resolve the issues raised in that action. Id., 69 ("we conclude that the [discovery] order did not arise from a separate and distinct proceeding because the personal records and documents to which it was directed are required by the trial court in order to resolve the underlying action").

In the present case, the trial court ordered the plaintiffs in error to appear in court so that they could be examined about certain events that took place during the Probate Court proceedings on Hewitt's application. Because both Hewitt and Sheridan had invoked their

fifth amendment right not to testify at the hearing on the order to show cause, the attorneys for the parties to the Probate Court proceedings were a critical source of information regarding the failure to give notice of those proceedings to McConnell. Thus, the discovery order was directed at materials that were required by the trial court in order to resolve the issues raised in McConnell's appeal and, therefore, the order was inextricably intertwined with the underlying proceeding. Accordingly, we conclude that the trial court's discovery order did not constitute a final judgment under the first prong of *Curcio* merely because the plaintiffs in error were not parties to McConnell's appeal.

The plaintiffs in error also claim, however, that there are important policy considerations that militate in favor of allowing them to bring this writ of error because the trial court's order implicated the attorney-client privilege. They again rely on this court's decision in *Woodbury Knoll, LLC*. See *Woodbury Knoll, LLC* v. *Shipman & Goodwin, LLP*, supra, 305 Conn. 769 ("there are strong policy considerations for excepting a nonparty attorney asserting a claim of privilege from the ordinary rule requiring a party to be held in contempt prior to being able to challenge a discovery order"). In *Woodbury Knoll, LLC*, however, the trial court had expressly rejected Finn Dixon's claim that the privileged materials could not be disclosed, and ordered their disclosure. Id., 755. In contrast, the trial court in the present case did not expressly order the production of privileged information, but sustained the specific objections of the plaintiffs in error that were based on the attorney-client privilege. We recognize that, on at least one occasion, the trial court rejected a claim that certain information was privileged and required its disclosure. We decline, however, to extend our holding in *Woodbury Knoll, LLC*, that a discovery order expressly requiring nonparty attorneys to produce information that is indisputably subject to the attorney-client privilege constitutes a final judgment, to rulings on disputes as to whether a specific item of information is subject to the attorney-client privilege. As this court previously has stated, "[t]he opportunities for delay that would become available if every disclosure order that might arguably implicate the attorney-client privilege could be appealed before trial are overwhelming to contemplate." *Melia* v. *Hartford Fire Ins. Co.*, 202 Conn. 252, 258, 520 A.2d 605 (1987). Moreover, even if the information that the trial court required the plaintiffs in error to disclose were privileged, immediate review of the specific ruling could provide no relief because the information has already been disclosed, and there is no "clear and definite discovery order" requiring the disclosure of additional privileged materials. *Woodbury Knoll, LLC* v. *Shipman & Goodwin, LLP*, supra, 761. Accordingly, we conclude that the trial court's order requiring the plaintiffs in error to appear

at the show cause hearing and to bring their client files was not a final judgment from which a writ of error may be brought.

The writ of error is dismissed.

In this opinion the other justices concurred.