FRANK USOWSKI ET AL. *v.* BARRY J.
JACOBSON ET AL.
(AC 21398)

Mihalakos, Dranginis and Hennessy, Js.

Argued January 15—officially released March 26, 2002

*Brenden P. Leydon,* for the appellant (named plaintiff).

*David P. Friedman,* for the appellees (defendants).

*Opinion*

DRANGINIS, J. The plaintiff Frank Usowski[1] appeals from the trial court's judgment of dismissal rendered in favor of the defendants.[2] On appeal, the plaintiff claims that the court improperly (1) found that he falsely answered the defendants' interrogatories with the intent to mislead and (2) abused its discretion in assessing a $72,216 sanction against him for allegedly answering interrogatories in bad faith. We reverse the

---

[1] Douglas C. Staley also was a plaintiff at trial. Because only Usowski has appealed, we refer to him in this opinion as the plaintiff unless otherwise indicated.

[2] The defendants are Barry J. Jacobson, Adam Jacobson, Pet Pantry Super Discount Stores, LLC, and Pet Pantry Warehouse.

trial court's order that the plaintiff pay a $72,216 sanction, but affirm the judgment of dismissal.

The following facts and procedural history are necessary for our resolution of the plaintiff's appeal. This dispute arises from an alleged oral partnership agreement between the parties.[3] The plaintiff brought a twelve count complaint against the defendants, seeking, inter alia, an accounting and dissolution of the partnership and alleging, inter alia, breach of contract, breach of fiduciary duty, fraudulent inducement and unfair trade practices. In the absence of a written partnership agreement, the plaintiff sought to prove that the defendant Barry J. Jacobson had held the plaintiff out to third parties as a partner in Pet Pantry Warehouse (Pet Pantry), a pet supply business. The defendants filed an answer, special defenses and counterclaims, alleging the plaintiff's failure to repay a loan, destruction of property and theft.[4]

During discovery, the defendants made several requests for the production of documents and directed interrogatories to the plaintiff, seeking, in essence, the names of those individuals with information about the alleged partnership agreement. In response, the plaintiff produced some documents and answered the interrogatories with a list of fifteen, and then 122 names of individuals, including vendors, employees and customers of Pet Pantry.[5] The court ordered the defendants to select four of the persons named and to depose them. If none of those deposed had knowledge of the alleged partnership, the plaintiff could be required to pay in advance to the court the cost of taking the remaining depositions. The plaintiff later amended his responses

---

[3] The plaintiff Douglas C. Staley also had alleged that he was a partner in the defendants' business.

[4] The counterclaims subsequently were withdrawn.

[5] We note that the record suggests that the number of names may have been as high as 140.

to provide the names of thirty-nine individuals. In accordance with the court-ordered procedure, four depositions were taken by the defendants and at their expense. None revealed evidence of the alleged partnership. The court ordered the plaintiff to pay a sanction for his failure to comply with discovery: $72,216, the estimated cost of all 118 of the remaining depositions. The court later modified its ruling and ordered payment for thirty-eight depositions (less one taken among the original four). Payment for any additional depositions, if taken, was ordered to be paid by the plaintiff in accordance with their actual cost. The plaintiff refused to pay the sanction and, on the defendants' motion, the court dismissed the case because of the plaintiff's pattern of discovery abuse. This appeal followed. Additional facts will be provided as necessary to resolve the issues presented.

We must first set forth the applicable standard of review.[6] "In order for a trial court's order of sanctions for violation of a discovery order to withstand scrutiny, three requirements must be met. First, the order to be complied with must be reasonably clear. In this connection, however, we also state that even an order that does not meet this standard may form the basis of a sanction if the record establishes that, notwithstanding the lack of such clarity, the party sanctioned in fact understood the trial court's intended meaning. This requirement poses a legal question that we will review de novo. Second, the record must establish that the order was in fact violated. This requirement poses a question of fact that we will review using a clearly erroneous standard of review. Third, the sanction imposed must be proportional to the violation. This

---

[6] We note that before oral argument was heard, both parties gave this court notice of the Supreme Court's decision in *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, 257 Conn. 1, 776 A.2d 1115 (2001). We agree that the standard articulated in that case is applicable here.

requirement poses a question of the discretion of the trial court that we will review for abuse of that discretion." *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, 257 Conn. 1, 17–18, 776 A.2d 1115 (2001).

We conclude that the first requirement of *Hamilton Standard* is not implicated. The record reveals that the order was reasonably clear. We must, therefore, consider whether the plaintiff in fact violated the order and whether the court abused its discretion in ordering a sanction that was not proportional to the violation and greater than that requested by the defendants. We address each issue in turn.

The plaintiff first argues that the court improperly found that there was a violation and that it improperly found that the plaintiff falsely had answered interrogatories with the intent to mislead. We are not persuaded.

"The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence . . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Premier Capital, Inc.* v. *Grossman*, 68 Conn. App. 51, 59, 789 A.2d 565 (2002).

The record shows that in November, 1999, the defendants filed a motion alleging discovery abuses by the plaintiff, specifically, that the plaintiff was engaged in an effort to ambuscade the defendants with the cost and inconvenience of taking depositions of all 122 people.[7] The court agreed and ordered the defendants to

---

[7] The defendants also pointed out that while the plaintiff Douglas C. Staley had made representations in this action that he was part owner of Pet Pantry, in a pending dissolution of marriage action, he failed to list Pet Pantry as an asset and indicated his salary as an *employee* at Pet Pantry.

identify four individuals on the list, with whom the defendants had had no communication concerning the action and to depose them at the defendants' expense. The court further ruled that should the four deponents fail to reveal information indicating that the plaintiff had a position of ownership, the court may order the plaintiff to pay the cost of deposing the remaining 118 individuals named. The plaintiff made no objection at that time, and in December, 1999, after the defendants identified the four deponents in a notice of deposition, the plaintiff reduced the number of names in his response to thirty-nine.

After the four depositions were taken, on March 21, 2000, the defendants filed a motion for sanctions against the plaintiff. The defendants argued that the four depositions did not shed light on the plaintiff's claims and, therefore, were evidence of the plaintiff's discovery abuse. The defendants also noted the court's prior ruling that the plaintiff had failed to produce documents.[8] The defendants requested a remedy, in accordance with the November, 1999 ruling, that the court order the plaintiffs to pay the costs of deposing the remaining 118 individuals. The court agreed and ordered the $72,216 sanction.

The plaintiff argues that the court improperly assessed the testimony in the four depositions that were

[8] On July 17, 1998, the defendants requested the production of several documents, pursuant to Practice Book § 13-9, indicating the existence of a partnership between the parties. Among the specific requests were the plaintiff's tax returns, W-2 forms, capital contributions, and profits and losses of the alleged partnership and communications between the parties. The defendants filed a "Fifth Request for Production and Documents" on November 4, 1998, seeking documents, and a motion to compel the plaintiff to respond to the defendants' request for documents. On April 12, 1999, the court ordered compliance; however, the plaintiff's compliance was inadequate. The plaintiff produced only a computer printout of his 1997 tax return. As a result, the court ordered that "documents requested but not produced are taken as establishing that both plaintiffs are employees of Pet Pantry and not owners or partners."

taken. Specifically, he argues that the court improperly found that the depositions did not offer any evidence of partnership because some deponents testified that they did not remember ever being told that the plaintiff was a partner in or owner of Pet Pantry. After a thorough review of the transcripts, we conclude that the court's finding was not clearly erroneous. The record supports the court's finding that none of the four deponents provided any indication that the plaintiff was an owner of or partner in Pet Pantry; rather, their understanding was that the plaintiff was an employee. It is evident that each deponent had no recollection that the plaintiff ever had been referred to as an owner. Three of the four deponents viewed the plaintiff as a managerial employee. Although one deponent, Robert Ginsberg, testified that the plaintiff Douglas C. Staley had told him that he had an interest in Pet Pantry, Ginsberg also testified that the plaintiff never had made a similar claim. Moreover, he also testified that his "impression" that Staley and the plaintiff had ownership interests came principally from Staley's statement and the plaintiff's apparent control over Pet Pantry employees and sales. We conclude that this testimony is consistent with the court's view that the deponents viewed the plaintiff as an employee. We therefore conclude that the court properly found no evidence of a partnership relationship in the deposition testimony and reasonably concluded that the plaintiff had named 122 individuals with the intent to unnecessarily cause the defendants to expend inordinate amounts of time and money, thereby abusing the discovery process.

The plaintiff next argues that the court abused its discretion because the court's monetary sanction was not proportional to his discovery violation.[9] We

---

[9] The court ordered the plaintiff to pay the costs for the remaining 118 depositions, an estimated total of $72,216. Upon reargument, the court modified its order such that the plaintiff was required within two weeks to pay to the clerk of the Superior Court $23,256, the cost of thirty-eight depositions (thirty-nine less one deposition already taken among the original four). A

agree.[10]

The plaintiff, by leave of the court, modified his interrogatory responses to include only thirty-eight names. The court, therefore, should not have ordered payment for 118 depositions. The order was excessive. It also gave the defendants the option to depose any or all of the individuals at the plaintiff's cost, thus, inviting more abuse and delay. "[D]iscretion imports something more than leeway in decision-making. . . . It means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . In addition, the court's discretion should be exercised mindful of the policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court." (Citations omitted; internal quotation marks omitted.) *Millbrook Owners Assn., Inc.* v. *Hamilton Standard,* supra, 257 Conn. 16. We therefore conclude that the sanction ordering the plaintiff to pay for the depositions was an abuse of discretion.

The plaintiff argues that the crux of his claim is that the court abused its discretion in ordering the aforementioned sanction. The plaintiff, however, has not appealed from a finding of contempt for failure to comply with a discovery order. Rather, the plaintiff appeals from a judgment of dismissal rendered against him for

second installment was to be paid "for any of the remaining 118 disclosed witnesses' depositions that the defendants wish to take in an amount to be determined by the court upon a proper written application by the defendants. The amount per deposition is to be determined by this court after submission of information of the actual cost per deposition to date."

[10] The plaintiff also argues that the sanction was not requested by the defendants and was, therefore, an abuse of discretion. We note that the record does not support that contention. That claim, therefore, does not form the basis of our conclusion.

alleged discovery abuse.[11] Therefore, we must also consider whether the court properly dismissed the case.

In granting the defendants' motion to dismiss, the court took into consideration the plaintiff's failure to comply with the defendants' request for documents; see footnote 8; his evasive answers to interrogatories and failure to make the court-ordered payments to the clerk of the court. The plaintiff, however, properly notes that he could not appeal from the discovery order without refusing to pay. See *Barbato* v. *J. & M. Corp.*, 194 Conn. 245, 250–51, 478 A.2d 1020 (1984). Notwithstanding the court's citing the plaintiff's failure to pay, we are not persuaded that the court's dismissal was an abuse of discretion.

The record supports the court's conclusion that the plaintiff engaged in a pattern of discovery abuse. First, the plaintiff failed to comply with the court's orders to compel the production of requested documents by providing only certain documents.[12] The plaintiff next provided a list of fifteen names, and then a list of 122 names, in his interrogatory responses.[13] The court noted that the names, which appeared in paragraph form after each specific interrogatory, were merely copied from one paragraph to the next by computer. The court marked off the court calendar the defendants' motion

---

[11] The defendants filed their motion to dismiss in response to the plaintiff's failure to make court-ordered payments to the clerk of the court.

[12] See footnote 8.

[13] With respect to the interrogatories, one of the plaintiff's responses, dated April 6, 1999, stated, "[M]any past and present employees, vendors and customers of Pet Pantry, including but not limited to . . . Usowski family members and Staley family members [in a list of approximately fifteen specific names]." On April 9, 1999, the defendants filed a motion to compel the plaintiff to provide responsive interrogatory answers. The defendants, through their counsel, also wrote two letters to the plaintiff, requesting compliance and pointing out inadequacies in the plaintiff's production. The defendants filed a second motion to compel, dated September 8, 1999, seeking full compliance with the court's April 12, 1999 order.

to compel responses, but ordered the defendants to select four individuals to depose. The court stated that if none of the witnesses had knowledge of the alleged partnership, the plaintiff would be required to pay in advance the cost of taking the remaining depositions. When the plaintiff was faced with the prospect of paying for all of the depositions, he amended his disclosure to provide thirty-nine names. As previously stated, none of the four individuals deposed offered evidence to support the plaintiff's assertion that they had information regarding the alleged partnership. In light of the plaintiff's continued resistance to disclosure and attempts to burden the defendants with unnecessary discovery, we conclude that the court properly granted the defendants' motion to dismiss.

The judgment of dismissal is affirmed. The order that the plaintiff pay $72,216 to the clerk of the Superior Court is vacated and the case is remanded for reconsideration, consistent with this opinion, and articulation of the basis of the sanction to be imposed, if any, on the plaintiff for his discovery violation.

In this opinion the other judges concurred.