FRANK USOWSKI ET AL. *v.* BARRY JACOBSON ET AL.
(SC 16789)

Borden, Norcott, Katz, Vertefeuille and Zarella, Js.

Argued May 23—officially released December 23, 2003

*Brenden P. Leydon,* for the appellant-appellee (named plaintiff).

*David P. Friedman,* with whom was *Marcy T. Stovall,* for the appellees-appellants (defendants).

*Opinion*

ZARELLA, J. In this action to recover damages for the alleged breach of an oral partnership agreement,

the named plaintiff, Frank Usowski,[1] appeals, and the defendants[2] cross appeal, following our grant of certification, from the judgment of the Appellate Court. The plaintiff claims on his appeal that the Appellate Court improperly affirmed the judgment of the trial court dismissing the complaint. The defendants claim on their cross appeal that the Appellate Court improperly reversed the trial court's order of monetary sanctions imposed against the plaintiff for continuing discovery violations. We affirm in part and reverse in part the judgment of the Appellate Court.

In June, 1998, the plaintiff and Douglas Staley filed this thirteen count complaint against the defendants. The complaint alleged that, in 1995, the plaintiff and Staley had entered into an oral partnership agreement with the named defendant, Barry Jacobson, for the purpose of jointly owning and operating a business known as Pet Pantry Warehouse (Pet Pantry) in Greenwich. Under the terms of the agreement, the plaintiff and Staley each was to have a 24.5 percent ownership interest in the business and Jacobson was to have a 51 percent ownership interest in the business. Jacobson subsequently created a limited liability company known as Pet Pantry Super Discount Stores, LLC, to conduct Pet Pantry's business. The plaintiff and Staley were not given an ownership interest in the newly created entity. The plaintiff and Staley, therefore, alleged that Jacobson wrongfully had ousted them from the business by denying them an interest in the new legal entity.[3] The defendants denied those allegations in their answer.

[1] In addition to Usowski, Douglas Staley also was a plaintiff, but Staley is not a party to this appeal. We therefore refer to Usowski as the plaintiff.

[2] The defendants are Barry J. Jacobson, his son, Adam Jacobson, Pet Pantry Warehouse, and Pet Pantry Super Discount Stores, LLC. We refer to them collectively as the defendants and individually by name where appropriate.

[3] The complaint alleged, inter alia, breach of contract, breach of fiduciary duty, fraudulent inducement and unfair trade practices, and requested an accounting, a dissolution of the oral partnership and damages. The defen-

In the absence of a written agreement, the plaintiff and Staley sought to prove that Jacobson had held them out to third parties as partners in Pet Pantry. Accordingly, the defendants commenced discovery by serving the plaintiff and Staley with interrogatories seeking information supporting their claims.

The first six interrogatories requested the names of individuals with knowledge of the status of the plaintiff and Staley as employees, partners or members of Pet Pantry.[4] The plaintiff and Staley responded by objecting to the question or by simply referring to categories of individuals, such as "[m]any past and present employees, vendors and customers of Pet Pantry" or "[p]ast and present employees and vendors of Pet Pantry, Jac Cohen, Doug Staley, Frank Usowski, Stephanie Staley, Usowski family members and Staley family members." In a letter to the counsel for the plaintiff and Staley, the defendants complained that the responses were inadequate. The defendants objected, in particular, to answers that did not name specific individuals, such as "[p]ast and present employees and vendors of Pet Pantry" and "Usowski family members and Staley family members." They accordingly requested that the plaintiff and Staley identify additional individuals with knowledge of the alleged partnership whom they could call as potential witnesses at trial.

The plaintiff and Staley revised their responses in reply to the defendants' objections. Although they continued to refer to "[p]ast and present employees and vendors of Pet Pantry, including but not limited to . . .

---

dants filed an answer, special defenses and counterclaims alleging failure to repay a loan, destruction of property and theft.

[4] The interrogatories provided as follows: "Identify all persons with knowledge regarding [the plaintiff's or Staley's] status as [an employee, partner or member] of the Pet Pantry, including but not limited to, all persons who have witnessed Barry Jacobson refer to [either the plaintiff or Staley] as [an employee, partner or member] of the Pet Pantry."

Usowski family members and Staley family members," they also named seventeen additional persons with knowledge of the alleged partnership.

Still dissatisfied, the defendants filed a motion to compel the production of more "specific answers to these pivotal questions." The defendants described the answers by the plaintiff and Staley as "a calculated effort to stall this litigation and increase [the] defendants' costs" by withholding "relevant information" to which the defendants were entitled. The defendants also objected to the continued references by the plaintiff and Staley to "past and present employees and vendors" and to unidentified "Usowski family members" and "Staley family members."

Although the court took no action on the motion to compel, the plaintiff and Staley again revised their responses to the first six interrogatories. Each of the new responses included approximately 122 names of persons with knowledge of the status of the plaintiff and Staley as employees, partners or members of Pet Pantry. Among those named were vendors, employees and customers of the business.

Asserting that the plaintiff and Staley had "dumped" the names of numerous individuals in an effort that was "designed to further delay the litigation and drive up [the] defendants' litigation costs," the defendants filed a motion seeking an order to compel "full compliance" with the interrogatories and an order granting the defendants monetary damages for costs and reasonable attorney's fees. The defendants argued that the plaintiff and Staley had named so many individuals that, without taking depositions from every person on the list, it would be impossible to ascertain which, if any, actually had witnessed or heard Jacobson refer to the plaintiff and Staley as partners of Pet Pantry. The defendants also argued that the belated provision of so many names

raised serious questions as to whether the plaintiff and Staley initially had responded to the interrogatories in good faith.[5]

The court conducted a hearing on the motion to compel in November, 1999. Counsel for the plaintiff and Staley explained that his clients' initial responses had identified the names of persons who were most involved with the business. When the defendants had deemed the responses inadequate, counsel for the plaintiff and Staley had asked the plaintiff and Staley to search through a vendor list and to select additional names, which they did. When the defendants had deemed the new responses inadequate, counsel had asked the plaintiff and Staley to examine the vendor list again and to be "all inclusive" in placing additional names on the list so as not to preclude any potential witnesses.

After hearing the arguments of counsel, the court marked off the motion to compel and ordered the defendants to take four depositions from persons on the most recent list of 122 names submitted by the plaintiff and Staley. Individuals whose names had been included in prior responses were not to be considered. The court directed that the four individuals selected by the defendants be deposed "cold," at the defendants' expense. The court stated that it would examine the depositions and, if it concluded that none of those deposed had knowledge of the alleged partnership, it would be "inclined" to order the plaintiff and Staley to pay, in advance, the cost of taking the remaining depositions. The court advised the plaintiff and Staley, however,

[5] The defendants argued that, if there were such a large number of individuals with knowledge regarding key elements of the case, the plaintiff and Staley should not have listed so few names in their prior responses to the interrogatories. On the other hand, the defendants contended, if the additional persons listed did not have relevant knowledge, listing them would drive up the defendants' litigation costs by forcing the defendants to take unnecessary depositions.

that they were free to amend their most recent list by reducing the number of names "to protect themselves from the financial consequences" of the order. The court also advised the defendants that they need not wait for submission of the revised list before making their selections. Neither party objected to the trial court's order.

On another matter, the court sanctioned the plaintiff and Staley for their failure to produce certain documents that would have demonstrated whether they had held themselves out to various governmental authorities, including the Internal Revenue Service, as owners or employees of the business. The sanction consisted of an order entered pursuant to Practice Book § 13-14 (b) (3)[6] that all of the requested documents, whether produced or not, were to be taken by the jury as establishing that the plaintiff and Staley were employees of Pet Pantry, rather than partners or owners. At the same time, the court observed that the counsel for the plaintiff and Staley had made "diligent efforts in producing the documents. I am satisfied that his two clients . . . are not good at keeping records . . . ." When defense counsel subsequently inquired as to the court's disposi-

---

[6] *Practice Book § 13-14 provides in relevant part:* "(a) If any party has failed to answer interrogatories or to answer them fairly, or has intentionally answered them falsely or in a manner calculated to mislead . . . the judicial authority may, on motion, make such order as the ends of justice require.

"(b) Such orders may include the following:

"(1) The entry of a nonsuit or default against the party failing to comply;

"(2) The award to the discovering party of the costs of the motion, including a reasonable attorney's fee;

"(3) The entry of an order that the matters regarding which the discovery was sought or other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

"(4) The entry of an order prohibiting the party who has failed to comply from introducing designated matters in evidence;

"(5) If the party failing to comply is the plaintiff, the entry of a judgment of dismissal. . . ."

tion of their application for costs on the motion to compel production, the court responded, "[D]enied. They made [a] good faith effort. I am satisfied they made a good faith effort."

After the defendants identified the four potential deponents, the plaintiff and Staley submitted a revised list of thirty-nine names. The defendants then deposed the four identified persons, only one of whom was on the revised list. Following the four depositions, the defendants filed a motion for sanctions against the plaintiff and Staley and for a judgment of dismissal against Staley. The defendants argued that none of the four deponents indicated that he had heard Jacobson refer to either the plaintiff or Staley as a partner or an owner of Pet Pantry, and that three of the deponents believed that the plaintiff and Staley were employees of the business. The defendants therefore argued that the plaintiff and Staley had abused the discovery process and that the court should order them to pay in advance for the costs of deposing the remaining individuals on the list. The defendants also requested that a judgment of dismissal be rendered against Staley because of his numerous acts of perjury and his continuing failure to produce various documents. The plaintiff and Staley did not respond to the motion.

In a memorandum of decision dated June 5, 2000, the court granted the motion for sanctions as to both the plaintiff and Staley and rendered a judgment of dismissal against Staley. The court found that the plaintiff and Staley had committed discovery violations by listing 122 names as potential witnesses in their responses to the interrogatories. It further concluded that "the 'name dumping' by [the plaintiff and Staley] was false, answered the interrogatories unfairly and was done to mislead the defendants and prevent the taking of the depositions due to the high costs involved. One of the sanctions is to pass on to the offending party

thé cost of the noncompliance." See Practice Book § 13-14 (a).[7] The court thus ordered the plaintiff to pay in advance for the remaining 118 depositions to be taken by the defendants and to deposit $72,216 for that purpose with the court within two weeks.

Fourteen days later, the plaintiff and Staley filed separate motions to reargue, which were granted by the court. In his motion, the plaintiff argued that he had not been given an opportunity to be heard on the sanctions motion. He further argued that, because he could not afford to make the advance deposit of $72,216, the sanction effectively would deny him his right of access to the courts. Thereafter, the court held a hearing on the motions to reargue.

At the hearing, the court acknowledged that, because it had not held a hearing prior to granting the defendants' motion for sanctions, it would consider the hearing on the motions to reargue a de novo hearing on the motion for sanctions. In the course of the hearing, the court conceded that its reference, during the November, 1999 hearing on the motion to compel, to a potential sanction requiring the payment of deposition costs had not been "a promise that that would happen, but I mentioned that was a possibility." Counsel for the plaintiff and Staley then offered to resolve the parties' dispute by providing the defendants with a list of persons that he would call as witnesses at trial. On August 3, 2000, the court issued a memorandum of decision. The court reaffirmed the findings, conclusions of law and reasoning in its June 5, 2000 decision, but vacated the prior order of sanctions against the plaintiff and entered a new order. The new order did not change the requirement that the plaintiff deposit $72,216 with the court to pay for the cost of the remaining 118 depositions, but it allowed him to make the deposit in two install-

---

[7] See footnote 6 of this opinion.

ments. The first installment of $23,256 reflected the cost of deposing the thirty-eight individuals[8] identified in the amended interrogatory response by the plaintiff and Staley and was to be paid within two weeks. The second installment for any other depositions the defendants might wish to take from the complete list of 122 names was to be paid in an amount to be determined by the court upon a written application by the defendants.

The plaintiff applied for certification to appeal to this court from the trial court's order of sanctions pursuant to Practice Book § 83-1 and General Statutes § 52-265a, but the application was denied. Thereafter, the defendants moved for a judgment of dismissal for the plaintiff's failure to deposit $23,256 with the court. The court granted the motion in a ruling from the bench. The court found a "continuing violation" by the plaintiff of the discovery orders on the basis of his failure to comply with three different orders, the first being the order to produce documents more than one year earlier. The second violation was the plaintiff's failure to comply with the June 5, 2000 order of sanctions. The third violation was his failure to comply with the August 3, 2000 order modifying the order of sanctions. Accordingly, the court rendered a judgment of dismissal against the plaintiff pursuant to Practice Book § 13-14 (b) (5). See footnote 6 of this opinion.

The plaintiff appealed from the judgment of dismissal. The Appellate Court affirmed the judgment of dismissal because of the plaintiff's continued resistance to disclosure and his attempts to burden the defendants with unnecessary discovery. *Usowski* v. *Jacobson*, 68 Conn. App. 785, 794, 793 A.2d 268 (2002). The Appellate Court also reversed the order of sanctions, concluding

[8] The court referred to thirty-eight rather than the thirty-nine names on the plaintiff's most recent amended list because one of the defendants' four deponents had been included in that list.

that the trial court had abused its discretion because the plaintiff had modified his discovery response by reducing the number of persons who could testify in support of his claim from 122 to thirty-nine. Id., 791–92. The Appellate Court thus determined that the monetary sanction was an abuse of discretion because it was out of proportion to the discovery violation, and it remanded the case to the trial court for reconsideration and articulation of the sanction, if any, to be imposed on the plaintiff. Id., 791, 794. Thereafter, the plaintiff and the defendants sought, and were granted, certification to appeal and to cross appeal, respectively, from the decision of the Appellate Court.[9] *Usowski* v. *Jacobson*, 261 Conn. 902, 802 A.2d 856 (2002); *Usowski* v. *Jacobson*, 261 Conn. 901, 802 A.2d 855 (2002). This appeal and cross appeal followed.

I

We first consider the defendants' claim that the Appellate Court improperly reversed the trial court's order imposing a monetary sanction on the plaintiff for discovery abuses.[10] The defendants argue that: (1) the sanction was narrowly tailored and proportional to the plaintiff's abusive discovery tactics; (2) the Appellate Court's finding that the trial court had abused its discretion in imposing the sanction rested on the flawed and improper presumption that the sanction would invite delay by encouraging the defendants to take unnecessary depositions; and (3) the Appellate Court improperly relied upon the wrong standard of review in deciding whether the sanction was appropriate. We disagree.

[9] Dismissal of the case as to all parties gave the Appellate Court jurisdiction to entertain an appeal on the sanctions issue, over which it would not otherwise have had jurisdiction. See *Green Rock Ridge, Inc.* v. *Kobernat*, 250 Conn. 488, 496–99, 736 A.2d 851 (1999).

[10] Ordinarily, we would address the issue regarding dismissal first, but, because the dismissal in this case was predicated on the sanctions order, we will consider the sanctions order first.

We begin with the applicable standard of review. "In order for a trial court's order of sanctions for violation of a discovery order to withstand scrutiny, three requirements must be met. First, the order to be complied with must be reasonably clear. . . . This requirement poses a legal question that we will review de novo. Second, the record must establish that the order was in fact violated. This requirement poses a question of fact that we will review using a clearly erroneous standard of review. Third, the sanction imposed must be proportional to the violation. This requirement poses a question of the discretion of the trial court that we will review for abuse of that discretion." *Millbrook Owners Assn., Inc.* v. *Hamilton Standard,* 257 Conn. 1, 17–18, 776 A.2d 1115 (2001).

"[T]he primary purpose of a sanction for violation of a discovery order is to ensure that the defendant's rights are protected, not to exact punishment on the [plaintiff] for its allegedly improper conduct." (Internal quotation marks omitted.) *State* v. *Respass,* 256 Conn. 164, 186, 770 A.2d 471, cert. denied, 534 U.S. 1002, 122 S. Ct. 478, 151 L. Ed. 2d 392 (2001). "The determinative question for an appellate court is not whether it would have imposed a similar sanction but whether the trial court could reasonably conclude as it did given the facts presented. Never will the case on appeal look as it does to a [trial court] . . . faced with the need to impose reasonable bounds and order on discovery." (Internal quotation marks omitted.) *Millbrook Owners Assn., Inc.* v. *Hamilton Standard,* supra, 257 Conn. 15–16.

We conclude that the Appellate Court properly reversed the trial court's August 3, 2000 order of monetary sanctions. The Appellate Court explained that, in view of the fact that the plaintiff and Staley had modified their interrogatory responses by leave of the court to include only thirty-eight names,[11] the trial court's order

---

[11] See footnote 8 of this opinion.

that the plaintiff pay the cost of taking 118 depositions was "excessive." *Usowski* v. *Jacobson,* supra, 68 Conn. App. 792. The Appellate Court also reasoned that the trial court's order "gave the defendants the option to depose any or all of the individuals at the plaintiff's cost, thus, inviting more abuse and delay." Id.

We agree with the Appellate Court's reasoning but add that, prior to ordering the imposition of sanctions, the trial court had instructed the plaintiff and Staley that they were free to reduce the number of names on the list to protect themselves from exactly the type of burdensome financial consequences that the court ultimately imposed. Accordingly, the order not only was excessive and invited delay, but also rendered meaningless the expressed rationale behind the court's prior instruction. We therefore conclude that the Appellate Court properly reversed the order of monetary sanctions for abuse of the trial court's discretion and properly directed that the case be remanded for further proceedings.

The defendants argue that the sanction was proportional to the discovery violation because the trial court (1) prior to ordering the sanction required the parties to follow specified procedures and warned them of the consequences if they did not comply, (2) "carefully calibrated" the sanction to address the consequences of the discovery violations, and (3) substantially modified the initial sanction to require that the plaintiff pay only that portion of the sanction that would cover the cost of thirty-eight depositions, with further payment subject to additional court review. We are not persuaded.

The defendants first argue that the court forewarned the plaintiff and Staley that they would be required to bear the costs of deposing all 118 persons in their penultimate list if the four initial deponents could not

provide the requested information. The defendants thus argue that the court, hearing no objection from the plaintiff or Staley to that proposal, had the right to conclude that the plaintiff and Staley were satisfied with the procedure. The argument that the plaintiff and Staley were forewarned and did not object to the sanction, however, has no bearing on whether the sanction was proportional to the violation. Moreover, the court did not state conclusively that it would impose such a sanction, but suggested that there might be room for further discussion when it stated at the November, 1999 hearing that it was "inclined" to order the sanction. Indeed, the court later conceded when hearing oral argument on the motions to reargue that the proposed sanction had been "a possibility," not "a promise," when initially discussed at the November, 1999 hearing. Furthermore, even if we agreed with the defendants that warning the plaintiff and Staley of future consequences should be considered in assessing the proportionality of the sanction, the court instructed the plaintiff and Staley that they could forestall a more costly sanction by submitting a list containing fewer names. In light of their compliance with the court's instruction, the plaintiff and Staley could not have expected such an onerous sanction after submitting the revised list.

We also reject the defendants' argument that the sanction was appropriate because it was "carefully calibrated" to respond to the discovery violation by the plaintiff and Staley by shifting to the plaintiff a portion of the costs that the defendants might incur. The court's instruction to test the validity of the list by deposing four individuals, thus providing an indication of how many persons on the entire list might have to be deposed in preparation for trial, cannot and should not detract from its contemporaneous instruction that the plaintiff and Staley could limit the financial consequences of any future sanction by reducing the number

of names. The plaintiff and Staley did as the court advised, and the plaintiff must not be penalized now by the trial court's subsequent failure to act in accordance with its own directive.

The defendants next argue that the Appellate Court disregarded the court's modification of the original sanction to require the payment of a smaller initial installment and to subject further payment requests to additional court review. We disagree. What the defendants fail to recognize is that, although the Appellate Court acknowledged the modification, it also pointed out that the total amount of the sanction had not been reduced. The plaintiff thus remained exposed to a heavy financial burden, which the defendants themselves described as "tremendous" and "staggering," if the defendants decided to take a large number of subsequent depositions. The trial court should not have overlooked the significant reduction in the number of names on the list submitted by the plaintiff and Staley, a modification that was made at the court's suggestion to avoid the possibility of harsh financial consequences.

The defendants also argue that the Appellate Court's finding of an abuse of discretion rests on the flawed presumption that the order giving the defendants an option to depose all 122 persons on the list invited abuse and delay. They argue that there was no basis in the record on which the court could have reached such a conclusion and, furthermore, that the defendants had no incentive to conduct unnecessary depositions that would have delayed the proceedings. The defendants' argument is unavailing.

The Appellate Court's decision to reverse the order of sanctions rested principally on its conclusion that the amount of the sanction was excessive, especially in light of the submission by the plaintiff and Staley of

a modified list with only thirty-eight names.[12] *Usowski* v. *Jacobson*, supra, 68 Conn. App. 792. The court observed, secondarily, that the open-ended nature of the order gave the defendants the opportunity to depose at the plaintiff's expense any or all of the remaining 118 individuals named in the earlier list. Id. Only then did the court suggest that the open-ended sanction might "invit[e]," not necessarily result in, abuse and delay. Id. Consequently, the Appellate Court's statement cannot be characterized as a presumption regarding what would occur in the future based on the defendants' past behavior, because it merely referred to what might occur if the defendants were granted such an open-ended remedy. Accordingly, we do not agree that the Appellate Court's conclusions rest on improper presumptions about the defendants' past behavior.

Finally, the defendants claim that the Appellate Court relied upon the wrong standard of review in deciding that the monetary sanction was inappropriate. They argue that the Appellate Court improperly took into account policy considerations as demonstrated by its recitation of the following passage from *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, supra, 257 Conn. 16: "[T]he court's discretion should be exercised mindful of the policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court." (Internal quotation marks omitted.) *Usowski* v. *Jacobson*, supra, 68 Conn. App. 792. The defendants contend that the monetary sanction did not implicate the policy considerations described, because the sanction was not a dismissal or an order that precluded a trial on the merits. The defendants also argue that no evidence was taken indicating that the plaintiff would be deprived of his day in court because he could not pay the sanction. The defendants' claim has no merit.

---

[12] See footnote 8 of this opinion.

The defendants have lifted the quoted language out of context and overlooked evidence in the record regarding the plaintiff's claims as to his financial status. In concluding that the monetary sanction was disproportionate to the discovery violation, the Appellate Court first stated that the sanction was excessive and invited abuse and delay by giving the defendants the option of deposing 118 individuals at the plaintiff's expense. It then quoted a passage from *Millbrook Owners Assn., Inc.* v. *Hamilton Standard,* supra, 257 Conn. 16, which began as follows: "[D]iscretion imports something more than leeway in decision-making. . . . It means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." (Internal quotation marks omitted.) *Usowski* v. *Jacobson,* supra, 68 Conn. App. 792. The passage ended with the language regarding policy preferences.

The disputed language in *Millbrook Owners Assn., Inc.,* was part of a broader discussion of the trial court's discretion to make certain decisions during the course of a trial. The court merely stated that, in exercising its discretion, one consideration to be taken into account was the policy preference of bringing about a trial on the merits. Considered in its entirety, the disputed language and the Appellate Court's analysis cannot be construed as improperly suggesting that the only underlying rationale for the Appellate Court's decision to reverse the order of sanctions was the policy preference to secure for the plaintiff his day in court. The language in question was at the end of the quoted passage and was very likely motivated by the plaintiff's statement in his motion to reargue that he would not be able to continue the litigation if the court imposed a sanction of $72,216. Accordingly, we reject the defen-

dants' argument that the Appellate Court improperly reversed the monetary sanction.[13]

## II

We next consider the plaintiff's claim that the Appellate Court improperly affirmed the trial court's judgment of dismissal. The plaintiff argues that, because the decision of the Appellate Court was premised on his failure to pay a sanction that it had just held to be an abuse of the trial court's discretion, the dismissal should not have been affirmed. We agree that the Appellate Court improperly affirmed the judgment of dismissal, but we base our conclusion on different grounds.

As previously stated, in order to withstand appellate review, a trial court's order of sanctions for the violation of a discovery order must be reasonably clear, the record must establish that the order was violated and the sanction imposed must be proportional to the violation. See *Millbrook Owners Assn., Inc.* v. *Hamilton Standard,* supra, 257 Conn. 17–18. Where the ultimate sanction of dismissal is involved, "[o]ur practice does not favor the termination of proceedings without a determination of the merits of the controversy where that can be brought about with due regard to necessary rules of procedure. . . . Therefore, although dismissal of an action is not an abuse of discretion where a party shows a deliberate, contumacious or unwarranted disregard for the court's authority . . . the court should be reluctant to employ the sanction of dismissal except as a last resort. . . . [T]he sanction of dismissal should be imposed only . . . where it would be the only reasonable remedy available to vindicate the legitimate

---

[13] We, therefore, do not address the plaintiff's alternative ground for affirmance on this issue, namely, that the trial court improperly found that the plaintiff answered the interrogatories falsely and with the intent to mislead.

interests of the other party and the court." (Citations omitted; internal quotation marks omitted.) Id., 16–17.

In the present case, the trial court dismissed the action on the ground that the plaintiff had engaged in a pattern of discovery abuse because he failed to comply with three separate discovery orders, two of which involved the payment of monetary sanctions. On appeal, the Appellate Court concluded, following an examination of the entire record, that the plaintiff had engaged in a pattern of discovery abuse by resisting disclosure of information and by attempting to burden the defendants with unnecessary discovery. *Usowski* v. *Jacobson*, supra, 68 Conn. App. 791.

The Appellate Court correctly acknowledged that the plaintiff claimed that the court had abused its discretion in ordering the monetary sanction. Id., 792. It stated, however, that the plaintiff had not appealed from a finding of contempt for failure to comply with a discovery order, but from a judgment of dismissal for alleged discovery abuse. Id., 792–93. The Appellate Court then proceeded to affirm the judgment by considering not only the failure by the plaintiff and Staley to comply with the document production order, but other evidence in the record that the trial court had not expressly considered when it rendered the judgment of dismissal. Id., 793. The additional evidence examined on appeal included the wide variation in the number of names contained in the multiple responses to the interrogatories and the deponents' lack of knowledge regarding the alleged partnership. Id., 793–94. The Appellate Court did not directly consider the plaintiff's failure to pay the two monetary sanctions. Id. We conclude that the Appellate Court did not consider the proper factors in reviewing the trial court's decision.

The trial court dismissed the plaintiff's action pursuant to § 13-14 of the Practice Book. Under that provi-

sion, dismissal is warranted if a party fails to comply with discovery orders. The provision contains no reference to dismissal for failure to comply with an order of sanctions. We stated, however, in *Green Rock Ridge, Inc.* v. *Kobernat,* 250 Conn. 488, 498, 736 A.2d 851 (1999), that, although a sanctions order is not itself a discovery order, it is an order entered for failure to comply with discovery procedure. Accordingly, there is no reason why a sanctions order should be treated any differently, for purposes of considering the finality of a judgment, from the discovery procedure of which it is a part. Id. Although in *Green Rock Ridge, Inc.*, we were comparing a sanctions order and a discovery order in the context of the finality of judgments, our conclusion that sanctions and discovery orders are similar in nature and thus should be treated in a similar manner remains valid in the present context. Accordingly, the trial court properly employed the ultimate sanction of dismissal for the plaintiff's failure to obey its prior discovery orders, including the orders imposing monetary sanctions.

Under *Millbrook Owners Assn., Inc.* v. *Hamilton Standard,* supra, 257 Conn. 17–18, the Appellate Court, in determining whether the sanction of dismissal was proportional to the violation, should have focused its analysis on the plaintiff's violation of the three orders that the trial court identified when it rendered the judgment of dismissal. We now undertake that analysis and conclude that the trial court abused its discretion because the record does not establish that the failure to comply with the discovery orders constituted a continuing pattern of violations that warranted dismissal of the action.

In each instance where the plaintiff and Staley failed to comply with the trial court's order, other factors of a mitigating nature also were present. The trial court first noted that the plaintiff and Staley had failed to

comply fully with the document production order, but at the time the court imposed the sanction for their failure to comply, it also acknowledged that they had made "diligent efforts" to locate and provide the documents requested and were simply "not good at keeping records." Even more significantly, the court denied the defendants' related application for costs on the ground that it was "satisfied [the plaintiff and Staley had] made a good faith effort" to produce the documents in question.

The plaintiff next failed to comply with the June 5, 2000 order of sanctions requiring him to deposit $72,216 with the court to pay for the cost of taking 118 depositions. The defendants correctly argue that "a party has a duty to obey a court order even if the order is later held to have been unwarranted." *Tomasso Bros., Inc.* v. *October Twenty-Four, Inc.*, 230 Conn. 641, 658 n.20, 646 A.2d 133 (1994); *Mulholland* v. *Mulholland*, 229 Conn. 643, 649, 643 A.2d 246 (1994). The plaintiff's violation, however, must be viewed in a broader context when one considers whether it ultimately justified dismissal of his action. Shortly after the June 5 order was imposed, the plaintiff and Staley timely filed motions to reargue.[14] The plaintiff contended that he had not been given an opportunity to be heard on the sanctions motion. At the outset of the hearing on the motions to reargue, the court therefore stated that, because it had not conducted a hearing on the defendants' motion for sanctions, it would consider the present hearing as a hearing de novo on the motion for sanctions. At the conclusion of the hearing, the court vacated the original

---

[14] Practice Book § 11-12 (a) provides: "A party who wishes to reargue a decision or order rendered by the court shall, within twenty days from the issuance of notice of the rendition of the decision or order, file a motion to reargue setting forth the decision or order which is the subject of the motion, the name of the judge who rendered it, and the specific grounds for reargument upon which the party relies." See also *Rosa Bros., Inc.* v. *Mansi*, 61 Conn. App. 412, 767 A.2d 116 (2002).

order and issued a new order directing the payment of the $72,216 in two installments. Accordingly, in conducting a hearing de novo on the sanctions motion and in modifying the terms of the original order, the court implicitly conceded deficiencies, both as to the procedure and the result, in the earlier proceeding.

The plaintiff also failed to comply with the trial court's August 3, 2000 order of sanctions, following which the defendants filed their motion to dismiss the case. The plaintiff persuasively argues, however, and the defendants do not disagree, that failure to comply with an interlocutory order to obtain a final judgment so that the order can be appealed is an appropriate way to raise an issue before a reviewing court. See *Pavlinko* v. *Yale-New Haven Hospital*, 192 Conn. 138, 142–43, 470 A.2d 246 (1984) (appeal taken after court dismissed case for plaintiff's refusal to answer deposition questions); C. Tait & E. Prescott, Connecticut Appellate Practice and Procedure (3d Ed. 2000) § 3.8, pp. 88–89 (appeal from discovery order possible only when noncompliance results in contempt citation or dismissal of action). In this case, the plaintiff, having failed in his attempt to obtain appellate review of the discovery order immediately after the order was entered, deliberately chose to seek review by failing to comply with the order and by appealing from the subsequent judgment of dismissal.

We conclude that the plaintiff's conduct, considered in its entirety, does not evince a "contumacious or unwarranted disregard for the court's authority"; (internal quotation marks omitted); that justified dismissal of the action. *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, supra, 257 Conn. 16. Dismissal was not the only reasonable remedy available to vindicate the legitimate interests of the defendants in avoiding undue expense during discovery. The plaintiff offered to disclose to the defendants a list of potential witnesses

with knowledge of the alleged partnership whom he intended to call at trial. Such a list would have assisted the defendants and substantially reduced their discovery costs by limiting the number of depositions required in preparation for the trial. Moreover, the plaintiff refused to pay the sanction for the express purpose of obtaining a final judgment so that the order could be appealed. The plaintiff thus took a calculated risk that, having been dismissed by the trial court, the action might not survive on appeal. Accordingly, the plaintiff's failure to comply with the three discovery orders did not constitute a pattern of abuse so egregious as to warrant dismissal, the remedy of last resort. We, therefore, conclude that the Appellate Court improperly determined that the trial court had not abused its discretion in dismissing the action.

The judgment of the Appellate Court insofar as it vacated the order of monetary sanctions and remanded the case for reconsideration and further proceedings is affirmed; the judgment of the Appellate Court insofar as it affirmed the dismissal of the plaintiff's action is reversed and the case is remanded to the Appellate Court with direction to reverse the trial court's judgment of dismissal and to remand the case to the trial court for further proceedings according to law.

In this opinion the other justices concurred.